IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANNE CHARLES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **QVC, INC. and SPECTRUM BRANDS, INC.** | : | **NO. 24-6703** |

## MEMORANDUM OPINION

**Savage, J.**                                                                    **June 10, 2025**

      In this product liability action, plaintiff Dianne Charles, a resident and citizen of Trinidad and Tobago ("Trinidad"), suffered severe burns and permanent disfigurement when a pressure cooker distributed by the defendants exploded while she was using it. Defendants, United States corporations, move to dismiss pursuant to the *forum non conveniens* doctrine. They argue that evidence pertaining to the design and manufacture of the pressure cooker is outside Pennsylvania, and all evidence relevant to Charles's injuries is in Trinidad. They maintain that Trinidad is the only convenient forum and offer no alternative forum in the United States. In essence, defendants contend it would be more convenient to litigate this action in a foreign jurisdiction rather than litigate in their own home forum—the United States.

      We conclude that defendants have not shown that they will suffer oppression and vexation out of all proportion to the plaintiff's convenience if the case is litigated here. Balancing the private and public interest factors does not weigh in favor of overriding the plaintiff's choice of forum which is based on access to the evidence critical to proving her

claims regarding the pressure cooker's defective design and misrepresentations in the labeling and owner's manual.  Therefore, we shall deny the motion to dismiss.

## Background

The pressure cooker that exploded took a path from China to Trinidad with stops in North Carolina and Florida.  It was originally marketed and sold by Salton, Inc., a Delaware corporation with its principal place of business in Illinois.[1]  Salton contracted with a Chinese entity to manufacture the product in China.[2]  The written materials accompanying the cooker were prepared in China.[3]

Salton sold it to QVC, a Delaware corporation with its principal place of business in West Chester, Pennsylvania, for resale on QVC's home-shopping television network.[4] QVC advertised and sold the cooker under its trademark, "Cook's Essentials."[5]

Salton later merged with Spectrum Brands, a Delaware Corporation with its principal place of business in Wisconsin.[6]  Spectrum assumed Salton's liabilities and is the custodian of the documents related to the design and manufacture of the Cook's Essentials Pressure Cooker.[7]

---

[1] Decl. of Rolando Cavazos ¶ 3 (attached as Ex. 3 to Defs.' Mem. of L. in Supp. of Defs.' Mot. to Dismiss Pursuant to the *Forum Non Conveniens* Doctrine, ECF No. 13-1 ["Defs.' Br."]), ECF No. 13-5 ["Cavazos Decl."].

[2] *Id.* ¶¶ 3–5.

[3] It is not clear exactly where the pressure cooker was designed or where its instruction materials were prepared.  According to QVC's Senior Buyer Christine Ford, the pressure cooker was designed and manufactured and the written materials were prepared in China.  Decl. of Christine Ford ¶ 10 (attached as Ex. 1 to Defs.' Br.), ECF No. 13-3 ["Ford Decl."].  Rolando Cavazos, Spectrum's Division Vice President for Global Product Development Operations, states that the pressure cooker was designed "either in China or Illinois."  Cavazos Decl. ¶ 6.  He says that Spectrum did not prepare the written materials.  *Id.* ¶ 13.

[4] Compl. ¶ 4, ECF No. 1; Ford Decl. ¶¶ 5–6.

[5] Cavazos Decl. ¶ 8.

[6] Compl. ¶ 5.  In 2009, Salton changed its name to "Russell Hobbs, Inc."  Cavazos Decl. ¶ 10. Russell Hobbs merged with Spectrum Brands in 2010.  *Id.* ¶ 11.

[7] *Id.* ¶ 12.

2

In February 2006, Charles's mother-in-law, Angela Charles, purchased the Cooks Essential's Pressure Cooker from QVC.[8]  QVC shipped the pressure cooker to Angela Charles's home in Florida from its distribution center in North Carolina.[9]  Angela Charles gifted the pressure cooker to plaintiff Dianne Charles, who resides in Trinidad.[10]

On September 2, 2023, while Charles was using the pressure cooker, the lid blew off, covering her in scalding liquid and steam.[11]  She sustained disfiguring burns across her chest, stomach and face.[12]

The owner's manual represented that the pressure cooker was equipped with failsafe devices to prevent the lid from coming off while in operation.  It assured users that "Built-in Safety Valves prevent opening the Lid while there is still pressure in the Removable Cooking Pot."[13]  The pressure cooker was labeled as compliant with UL product industry standards.[14]  UL Standard 136, which applies to at-home pressure cookers, requires that "[a]n ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons.  The propelling of a loosened cover and the escape

---

[8] Ford Decl. ¶ 12.

[9] *Id.* ¶ 13.

[10] Compl. ¶¶ 3, 13

[11] *Id.* ¶¶ 14–17.

[12] *Id.* ¶ 35.

[13] *Id.* ¶ 19.

[14] *Id.* ¶ 21; Decl. of Adam W. Pittman ¶ 6 (attached as Ex. 1 to Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss Pursuant to the *Forum Non Conveniens* Doctrine, ECF No. 26-1 ["Pl.'s Opp'n"]), ECF No. 26-2 ["Pittman Decl."].  The UL standards, developed by Underwriters Laboratories, are "published set[s] of best practices for testing and evaluating the safety, security, and sustainability of a product or system, developed and voted on by experts across industries and interests. When a product conforms to a UL standard, the standard ensures quality and consistency in its materials, construction, manufacture, testing, installation, performance, and use." *Introduction to Standards*, UL Standards & Engagement (June 11, 2024), https://perma.cc/ZVC3-SNZ5.

3

of steam or hot water are examples of this risk."[15]  Standard 136 also demands that "[t]he cover locking mechanism is to be operated through 6000 cycles."[16]

Charles alleges that the pressure cooker was defective and noncompliant with the UL standard because the Safety-Lid Lock failed while the appliance was pressurized enough to cause serious injury to Charles.[17]  She alleges the pressure cooker "has not been used anywhere near 6,000 times."[18]

Charles asserts claims for strict liability, negligence, and misrepresentation. She alleges defendants failed to properly design and manufacture the pressure cooker, failed to warn consumers of the defective condition, and misrepresented that the pressure cooker had failsafe devices and was compliant with UL standards.

## Analysis

Under the *forum non conveniens* doctrine, a district court may dismiss an action where a court in another country is the more appropriate and convenient forum for adjudicating the controversy.  Although the plaintiff's choice of forum is rarely disturbed, it may be outweighed when litigating the case in the chosen forum would cause the defendant "oppressiveness and vexation . . . out of all proportion to plaintiff's convenience" or when trial in the chosen forum would be inappropriate in light of "the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).[19]

---

[15] Compl. ¶ 23, n.1 (quoting UL 136 § 9.1).

[16] *Id.* ¶ 24, n.2 (quoting UL 136 § 10).

[17] *Id.* ¶¶ 23, 38.

[18] *Id.* ¶ 25.

[19] The relevant home forum for purposes of the *forum non conveniens* analysis is the United States. *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1271 (11th Cir. 2009); *Nat'l Union Fire Ins. Co. of*

4

The test is more than mere inconvenience. It is whether litigating the case in the forum would impose an oppressive and vexatious burden on the defendant.

The *forum non conveniens* analysis consists of three steps. First, we determine whether the proposed alternative forum is adequate. Second, if it is, we decide how much deference to accord the plaintiff's chosen forum. Third, we balance the relevant public and private interest factors. If, after balancing these factors, we find that litigating the case here would cause the defendant oppression or vexation out of all proportion to the plaintiff's convenience, we may dismiss the case. *Windt v. Qwest Commc'ns Int'l, Inc.,* 529 F.3d 183, 190 (3d Cir. 2008); *see also Piper*, 454 U.S. at 255.

The defendant has the burden of showing that there is an alternative forum and "the private and public interest factors weigh heavily on the side of dismissal." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 443 (3d Cir. 2017) (quoting *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 44 (3d Cir. 1988)). The burden of persuasion is significant. *Id.*

*Adequacy of the Alternative Forum*

So long as the defendants are subject to service and the foreign tribunal recognizes some form of redress, the alternative forum is considered adequate. *See Piper,* 454 U.S. at 244 n.22.

To alleviate any concern that the defendants are not subject to the jurisdiction of the Trinidadian courts, the defendants offer to consent to Trinidad's jurisdiction.[20] They will also accept service of process and comply with all discovery obligations and

---

*Pittsburgh, PA v. BP Amoco, P.L.C.*, Civ. No. 03-200, 2003 WL 21180421, at *9 n.8 (S.D.N.Y. May 20, 2003) (citing *DiRienzo v. Phillip Services Corp.*, 294 F.3d 29, 31–32 (2d Cir.2002)).

[20] Reply in Supp. of Defs.' Mot. to Dismiss Pursuant to the *Forum Non Conveniens* Doctrine 2–4, ECF No. 27 ["Defs.' Reply"].

5

procedural rules.[21]  They agree to pay any damages awarded to Charles by the Trinidadian courts.[22]  Thus, the defendants will be subject to the Trinidadian court.

That the substantive law of the alternative forum is less favorable to the plaintiff does not render that forum inadequate.  *Piper*, 454 U.S. at 247, 254–55.  The alternative forum will be considered inadequate only if it does not permit litigation of the dispute or the remedy available is "so clearly inadequate or unsatisfactory that it is no remedy at all."  *Trotter*, 873 F.3d at 440 (quoting *Piper*, 454 U.S. at 254).

Defendants argue that Charles has a remedy in Trinidad.[23]  They rely on the declaration of Trinidadian attorney Vishma Jaisingh.  She explains that Trinidad recognizes causes of action for negligence and misrepresentation for Trinidadian citizens injured by products in Trinidad.[24]  She declares that under Trinidadian law, a manufacturer can be held liable for harm caused to consumers of its products.[25]  She states that because the statute of limitations in negligence actions is four years, Charles's claims are not time-barred in Trinidad.[26]  Jaisingh concludes that if Charles establishes a negligence or misrepresentation claim, compensatory damages will be available in Trinidad.[27]

There is no question that Trinidadian law is less favorable to Charles than Pennsylvania law.  There is no strict liability cause of action in Trinidad.[28]  Nonetheless,

---

[21] Decl. of Kerry Mohan ¶¶ 2–4 (attached as Ex. 2 to Defs.' Reply), ECF No. 27-2 ["Mohan Decl."]; Decl. of Vincent LaMonaca ¶¶ 2–4 (attached as Ex. 3 to Defs.' Reply), ECF No. 27-3 ["LaMonaca Decl."].

[22] Mohan Decl. ¶ 5; LaMonaca Decl. ¶ 5.

[23] Defs.' Br. 7.

[24] Decl. of Vishma Jaisingh ¶¶ 11, 20, 27 (attached as Ex. 4 to Defs.' Br.), ECF No. 13-6 ["Jaisingh Decl."].

[25] *Id.* ¶¶ 22–25.

[26] *Id.* ¶¶ 12, 32.

[27] *Id.* ¶¶ 31, 33.

[28] Defs.' Br. 6.

Charles can obtain relief there.  If she proves her negligence or misrepresentation claim, she will be entitled to compensatory damages.

Because defendants have consented to jurisdiction in Trinidad and Charles's claims are cognizable there, Trinidad is an adequate alternative forum.

### *Deference Due Plaintiffs' Choice of Forum*

Because a domestic plaintiff's choice of forum enjoys a strong presumption of convenience, it receives great deference.  *Piper Aircraft*, 454 U.S. at 241, 255; *Windt*, 529 F.3d at 190.  But, a foreign plaintiff's choice is accorded less deference. *Windt*, 529 F.3d at 190 (quoting *Piper Aircraft*, 454 U.S. at 256).

Although a foreign plaintiff's choice deserves less deference, there is a presumption that it is for convenience.  *Piper*, 454 U.S. at 241, 255.  "The focus of the deference inquiry. . . is on convenience, not on the particular significance of a party's residence or citizenship or a party's ability to invoke a United States court's jurisdiction." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 875 (3d Cir. 2013).  Thus, a foreign plaintiff can support her choice by making a strong showing of convenience.  *Windt*, 529 F.3d at 190 (quoting *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989)).

If the chosen forum has a substantial relationship to the parties and the events involved in the case, the foreign plaintiff's choice is given more weight than is typically given.  It suggests that convenience motivated the plaintiff's choice.  *See Windt*, 529 F.3d at 190; *Lony*, 886 F.2d at 634.

Defendants focus on where Charles resides, not on her convenience.  They argue her choice should be given less deference because she is not at home here and this

7

litigation has a limited connection to Pennsylvania.[29] They point out that the incident, her injuries, and her medical treatment occurred in Trinidad where she resides.[30] They stress that QVC's presence in Pennsylvania has no connection to the design and manufacture of the pressure cooker because it was designed and manufactured in China, its instruction materials were prepared in China, and it was shipped from a distribution center in North Carolina to Angela Charles in Florida.[31]

Because Charles resides in a foreign jurisdiction, we do not accord her choice of forum the same degree of deference a domestic plaintiff's choice gets. However, we conclude that the Eastern District of Pennsylvania has sufficient ties to this litigation to suggest her choice was motivated by convenience.

Charles chose to sue in the United States where both defendants are located. She selected the Eastern District of Pennsylvania because QVC is based here. That QVC is at home in this district "in itself has considerable weight in showing that the plaintiff's choice was based on convenience." *Lony*, 886 F.2d at 634.

Not only is QVC located here, its conduct occurred here. QVC marketed and advertised the pressure cooker on-air from its Pennsylvania studio. It made representations about the product to consumers in its on-air marketing.

Because there is a nexus between the Eastern District of Pennsylvania, the defendants, and the conduct giving rise to Charles's theories of liability, Charles has demonstrated her choice of forum was motivated, at least in part, by convenience. That motivation becomes more apparent when we weigh the private interest factors.

---

[29] *Id.* at 7.

[30] *Id.* at 8.

[31] *Id.* at 8–9.

8

Therefore, we accord her choice less deference than we would give to a domestic plaintiff, but more than we would usually give to a foreign plaintiff. *See Cousins v. Sikorsky*, 752 F. Supp. 443, 456 (E.D. Pa. 2024).

*Private and Public Interest Factors*

We now weigh and balance the private and public interest factors.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) a view of the premises, if appropriate; and (4) other practical problems that make trial of a case easy, expeditious and inexpensive. *Windt*, 529 F.3d at 189 (quoting *Gilbert*, 330 U.S. at 508).

Defendants argue that the first two private interest factors favor dismissal because the damages evidence is located in Trinidad and most of the liability evidence is located outside Pennsylvania. Although defendants contend there may be evidence bearing on liability in Trinidad, there is none.

Defendants emphasize the damages evidence while minimizing the liability evidence. The damages evidence, though significant, is not complicated or extensive. On the other hand, the liability evidence will entail showing how the cooker was designed, manufactured, and produced. Gathering and presenting that evidence will involve the testimony of experts, employees and former employees of the defendants and Spectrum's predecessors. That evidence is not in Trinidad. It is in the United States and primarily in the possession of the defendants.

Defendants make two arguments to refute Charles's claim that there is no liability evidence in Trinidad. The first is that an "essential element to establish liability in ordinary

9

negligence and strict liability claims is damages, which will rely on evidence that can only be accessed in Trinidad and Tobago."[32]  The second is that discovery may reveal "liability evidence" of Charles's comparative fault located in Trinidad—including eyewitnesses to the incident.[33]

The only eyewitness the parties have identified is Charles's husband.[34]  Charles has agreed to make him available to testify in the U.S. at her own expense.[35]  Charles can testify to her own use of the pressure cooker.  Therefore, defendants have not established that critical comparative fault evidence in Trinidad will be unavailable if the case proceeds here.

Charles does not dispute that evidence relevant to her damages is located in Trinidad.[36]  Records related to her injuries, treatment, and recovery are there.  Charles's treating provider, her daughter, and her husband reside in Trinidad.

Defendants contend that because Trinidad is not a signatory to the Hague Convention on the Taking of Evidence Abroad, a U.S. court cannot compel Trinidadian witnesses to testify here.[37]  They argue that even if Trinidadian witnesses are willing to

---

[32] Defs.' Reply 8 (emphasis omitted).

[33] *Id.* at 9.

[34] Defendants identified Charles's husband as an eyewitness to the incident during oral argument.

[35] At oral argument, Charles confirmed she will make herself, her husband, and her daughter available to testify in the United States at her own expense.

[36] *See* Pl.'s Opp'n 17.

[37] Defs.' Br. 12; Jaisingh Decl. ¶ 34.  Defendants contend that Trinidad's status as a nonparty to the Hague Convention on the Taking of Evidence Abroad distinguishes this case from *Cousins v. Sikorsky Aircraft Corp.*, 752 F. Supp. 3d 443 (E.D. Pa. 2024), where we denied *forum non conveniens* dismissal.  Defs.' Br. 12.  In *Cousins,* the relevant alternative forum was Canada.

Like Trinidad, Canada is not a party to the Hague Convention on the Taking of Evidence Abroad. *See* U.S. Dep't of State—Bureau of Consular Affairs, *Judicial Assistance Country Information: Canada*, https://perma.cc/J6S8-D8S2 (last visited May 12, 2025).  Therefore, as we explained in *Cousins*, litigants must rely on letters rogatory to obtain evidence from foreign witnesses in a U.S. proceeding.  *Cousins*, 752 F. Supp. 3d at 462.  The parties in *Cousins* submitted expert evidence demonstrating Canada's "'liberal approach' to enforcing letters rogatory from U.S. courts."  *Id.* (citing *District Court of United States, Middle*

10

testify voluntarily, transporting them to Pennsylvania will be costly and onerous.[38] Because evidence of Charles's damages will be unavailable or difficult to obtain in a proceeding here, defendants argue, Trinidad is the more convenient forum.

According to Charles, proving her damages will not be as onerous as defendants make it seem. She contends that her own testimony will be sufficient proof of her pain and suffering.[39] She argues that testimony from her treating physician is not necessary.[40] Nor will the parties require proof of her medical expenses, which are not recoverable because they were covered by the Trinidadian government.[41] During oral argument, Charles confirmed that she is not claiming damages for medical expenses, lost wages, or loss of earning capacity.

Charles can decide to rely solely on her own testimony regarding her damages. But, defendants are entitled to depose her treating physicians and call them to testify at trial. Given the nature of the disfiguring injuries and their obvious permanency, it appears there will be little for her physicians to explain. Nonetheless, defendants are entitled to call them. If they do, depositions may be conducted remotely and trial testimony of physicians may be presented by video as is done routinely.

Charles can produce documentary evidence of her damages in any forum. Indeed, she has already produced medical records regarding her treatment in Trinidad and will

---

*District of Florida v. Royal American Shows Inc.*, 1 S.C.R. 414, 421 (Can. 1982); *Sunline USA LLC v. Ezzi Grp., Inc.*, 708 F.Supp.3d 585, 595–97 (E.D. Pa. 2023)).

In this case, none of the parties have addressed whether Trinidad is likely to enforce letters rogatory issued from a U.S. court to obtain evidence from Trinidadian witnesses.

[38] Defs.' Br. 13.

[39] Pl.'s Opp'n 18.

[40] *Id.*

[41] *Id.*

11

continue to do so as the litigation proceeds.[42]

The best source of evidence of Charles's damages is her own testimony. She will testify as to the incident, her medical treatment, and the pain and suffering caused by her obvious disfiguring injuries and permanent scarring. To the extent there are witnesses with knowledge of her damages in Trinidad, Charles has the burden to produce them. She has agreed to produce her husband and daughter to testify about her damages in the United States at her own expense. At oral argument, defendants stated they intend to conduct medical examinations to determine the extent of Charles's injuries and scarring in the United States. Thus, the lack of compulsory process over Trinidadian damages witnesses is not an issue.

Defendants contend that although QVC is located here, there is little, if any, liability evidence in this district. They argue that they had no role in the design or manufacture of the pressure cooker or the preparation of its instruction manual, which took place in China.[43] The pressure cooker was designed in Illinois and manufactured in China.[44] Spectrum, the custodian of the design and manufacture documents, is located in Wisconsin.[45] Defendants concede that some relevant records "may" be located in Pennsylvania.[46] However, they claim that this evidence "can be transferred electronically [and] can be easily produced" abroad.[47]

To the extent there is relevant evidence regarding the manufacture of the pressure

---

[42] *See id.*; Decl. of James M. Weiss, Esq. ¶¶ 6–7 (attached as Ex. 2 to Defs.' Br.), ECF No. 13-4.

[43] Defs.' Br. 11; Ford Decl. ¶¶ 7–11.

[44] Defs.' Br. 11.

[45] *Id.*

[46] *Id.*

[47] *Id.*

cooker in China, it is likely in possession of the third-party Chinese manufacturer. Because the manufacturer is a foreign entity and a nonparty to this action, evidence in its possession is equally unavailable to any party in either forum.

All other liability evidence is located in the United States. Evidence pertaining to the pressure cooker's design and manufacture is in the custody of Spectrum in Wisconsin. During oral argument, the parties advised that their expert witnesses are located in the United States.

That QVC did not design or manufacture the pressure cooker does not mean it does not have relevant liability evidence. QVC endorsed the cooker on-air from here. QVC made representations about the product in its on-air marketing. The cooker bears a QVC trademark and the representation that the pressure cooker is UL-compliant.[48] Witnesses and documents regarding the relationship between QVC and Salton, what QVC knew about the design and safety of the cooker, and how QVC came to place its trademark on the cooker are relevant to liability. That evidence is in QVC's possession at its Pennsylvania headquarters.

Where documentary evidence can be found is not a concern. It can be produced electronically in either forum. As for U.S.-based witnesses within the defendants' control, it will be significantly more convenient for them to travel to a trial in the United States than it would be to Trinidad. This is especially true of witnesses residing near QVC's headquarters, which is located only 35 miles from the Philadelphia courthouse.

Discovery may reveal nonparty witnesses who have relevant evidence. For example, QVC or Salton employees who participated in the design or marketing of the

---

[48] Pittman Decl. ¶ 6.

13

product purchased nearly 20 years ago may have since left their employment. Nonparty witnesses, including the defendants' former employees, are more likely to be available in a U.S. forum than in Trinidad. Certainly, travel would be more convenient for them if the case is litigated here.

Trinidad has no compulsory process over U.S.-based nonparty witnesses. On the other hand, if the case proceeds here, all nonparty witnesses within 100 miles of the courthouse could be compelled to appear for trial.[49]

To summarize, there is substantial liability evidence located in the United States and the Eastern District of Pennsylvania. None is located in Trinidad. Defendants can easily produce the evidence in either forum. Doing so will be more convenient in the Eastern District of Pennsylvania than in Trinidad. Nonparty liability witnesses will be subject to compulsory process in this forum and not in Trinidad. The volume of liability evidence located in the United States is substantially more than that of the damages evidence located in Trinidad. There is little, if any, chance that the defendants would have to travel to Trinidad to garner evidence, imposing an oppressive and vexatious burden on them. Therefore, we conclude that the first two private interest factors weigh against dismissing this action.

A view of where the incident occurred is not necessary. A view of the cooker is. Charles can produce the cooker anywhere—in Trinidad and here without difficulty. Therefore, this factor is neutral.

---

[49] Charles argues, without authority, that "this forum enjoys subpoena power throughout the United States." Pl.'s Opp'n 17. This is incorrect. A federal subpoena may only command a person to attend a trial, hearing, or deposition, or to produce documents, within 100 miles of where he resides or works. Fed. R. Civ. P. 45(c). The only circuit court to address the issue has determined that the 100-mile limit applies to remote testimony. *In re Kirkland*, 75 F.4th 1030, 1043–44 (9th Cir. 2023).

With respect to the fourth private interest factor, defendants argue that trying the case here will require the costly transportation of Trinidadian witnesses to Philadelphia.[50] Charles counters that depositions can be conducted remotely and that she will bear the costs of travel for Trinidadian damages witnesses appearing at trial in the United States.[51]

Instead of showing how litigating this case here would cause them oppression and vexation, the defendants argue that it would not be convenient for Charles. The question is whether the chosen forum is "oppressive and vexatious" to the defendants out of all proportion to Charles's convenience. *See Piper*, 454 U.S. at 241. It is not.

Trying the case in the Eastern District of Pennsylvania will be more convenient for Charles and the defendants. As we have explained, much of the evidence required to prove her claims is located here. Though she will have to travel from Trinidad for trial, she will bear the costs. The defendants will not.

The Eastern District of Pennsylvania is also more convenient for defendants. All evidence within their custody and control is located here. If this case is tried in Trinidad, defendants will have to expend the cost of transporting their U.S.-based witnesses. Hence, the defendants cannot claim that litigating here would be more burdensome than doing so in Trinidad.

In short, litigating in the Eastern District of Pennsylvania will be more convenient for all parties and most witnesses. It will not be oppressive and vexatious to the defendants let alone out of all proportion to Charles's convenience. Therefore, the private interest factors do not weigh in favor of dismissal.

---

[50] Defs.' Br. 14.

[51] Pl.'s Opp'n 19.

15

The public interest factors include court congestion, the forum's interest in having local disputes decided "at home," the interest in having the case decided in the forum whose law will govern the case, the avoidance of unnecessary conflict of laws problems, and the unfairness of burdening citizens with jury duty in a forum having no relationship to the dispute. *Windt*, 529 F.3d at 189 (citing *Gilbert*, 330 U.S. at 508-09).

The parties agree that the relative court congestion factor slightly favors the Eastern District of Pennsylvania.[52] According to Jaisingh, cases filed in the Trinidadian courts take two to three years to reach trial.[53] The median time from filing to trial in the Eastern District of Pennsylvania is 28.3 months.[54] Therefore, the time to trial is not much different if the case is tried in the Eastern District of Pennsylvania or Trinidad.

Defendants argue that Trinidad has a greater interest than Pennsylvania because a Trinidadian citizen was harmed.[55] Pennsylvania, they argue, has no interest because "virtually none" of the conduct giving rise to Charles's claims took place in Pennsylvania.[56]

Charles counters that Trinidad has little interest in this litigation because none of the tortious conduct occurred within its borders and defendants have no business presence there.[57] On the other hand, Charles argues, Pennsylvania has an interest in regulating the safety of products sold by corporations located here.[58]

---

[52] Defs.' Br. 15; Pl.'s Opp'n 21.

[53] Jaisingh Decl. ¶ 10.

[54] U.S. District Courts — National Judicial Caseload Profile (last visited June 9, 2025), https://perma.cc/9DC7-4URU.

[55] Defs.' Br. 16.

[56] *Id.* at 15–16.

[57] Pl.'s Opp'n 21.

[58] *Id.*

16

QVC is a Pennsylvania corporation which continues to market and sell products from West Chester. QVC advertised and sold the pressure cooker from its television studio here. Although Spectrum is not a Pennsylvania corporation, its predecessor contracted to sell the pressure cookers to QVC for marketing and sale on its Pennsylvania-based television broadcast.

QVC marketed and distributed the pressure cooker throughout North America.[59] Pennsylvania has an interest in the safety of products introduced into the stream of commerce from here. The United States has an interest in "redressing wrongful conduct" of U.S. corporations. *See Windt,* 529 F.3d at 193–94.

Pennsylvania has an interest in regulating the conduct of corporations operating in the Commonwealth. *See Lony,* 886 F.2d at 642 ("Delaware is interested in ensuring that businesses incorporated or operating within its borders abide by the law; Germany is interested in insuring that businesses selling their products within Germany or to German companies abide by the law and do not engage in wrongful business practices or misrepresent their products."); *Cousins*, 752 F. Supp. 3d at 467; *Behrens v. Arconic*, Inc., 487 F. Supp. 3d 283, 333 (E.D. Pa. 2020) (rev'd in part on other grounds) ("Many courts have recognized a state's legitimate interest in policing the conduct of corporations that operate within its borders, especially in the context of an international accident."); *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 116 F. Supp. 3d 519, 525 (E.D. Pa. 2015) ("Pennsylvania has an interest in ensuring that its corporations do not engage in tortious conduct which causes injury to anyone, regardless of where those individuals reside."); *Harrison v. Wyeth Lab'ys Div. of Am. Home Prods. Corp.*, 510 F. Supp. 1, 4 (E.D. Pa.

---

[59] Ford Decl. ¶ 5.

1980) (recognizing "Pennsylvania's interest in the regulation of the conduct of drug manufacturers and the safety of drugs produced and distributed within its borders").

Pennsylvania also has a reputational interest. It benefits from a reputation for distributing safe and reliable products. That reputation is harmed when someone is injured using a product marketed and sold from Pennsylvania. Conversely, it is enhanced when it is determined that a Pennsylvania corporation marketed a safe product. Thus, Pennsylvania has an interest in ensuring that corporations sell safe products and that they are not treated unfairly when their products are safe. *See Cousins*, 752 F. Supp. 3d at 467.

Trinidad's interest in this litigation is redressing harm done to one of its citizens. That interest is not insignificant. But, its injured citizen will unquestionably stand to obtain relief here. The recovery available here is more favorable. Although a more favorable remedy is not relevant to the adequacy of the Trinidad forum, it is relevant to Trinidad's interest in protecting its citizen's remedy.

Defendants have no presence in Trinidad and did not market the pressure cooker there. That the pressure cooker ended up in Trinidad as a gift from an American consumer is fortuitous. The defendants do not do business there and any consequences of an adverse verdict against them will not be felt there.

Although Trinidad has an interest in obtaining relief for a Trinidadian citizen injured by a defective product, Pennsylvania has an interest as well. This factor weighs slightly against dismissal.

There is no apparent need to apply foreign law. At this time, we cannot definitively determine that Pennsylvania law will govern Charles's claims. The choice-of-law public interest factor is, at most, neutral.

As to the final public interest factor, there is no unfairness in burdening citizens in the Eastern District of Pennsylvania with jury duty. As we have already concluded, Pennsylvania has a significant relationship to this litigation. This action involves a well-known Pennsylvania corporation with many employees in the Eastern District of Pennsylvania. It would not unfairly burden jurors in the Eastern District of Pennsylvania to decide whether a defendant, who conducts business nationwide from its headquarters here, is liable for Charles's injuries. Therefore, this factor does not weigh in favor of dismissal.

## Conclusion

After careful consideration of the private and public interest factors, we conclude that litigating this case in the Eastern District of Pennsylvania will not result in oppression and vexation to the defendants out of all proportion to Charles's convenience. Therefore, we shall deny the motion to dismiss this action on *forum non conveniens* grounds.