## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANNE CHARLES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **QVC, INC. and SPECTRUM** | : | |
| **BRANDS, INC.** | : | **NO. 24-6703** |

### MEMORANDUM OPINION

**Savage, J.**                                                                                                                   **January 6, 2026**

      In this products liability action, defendants QVC, Inc. and Spectrum Brands, Inc. move for a determination that the law of Trinidad and Tobago, where plaintiff resides and was injured, applies. Plaintiff Dianne Charles argues that the law of Pennsylvania, where the product causing her injuries was marketed and defendant QVC is located, applies. The parties acknowledge that there is an actual conflict of law—Trinidad and Tobago does not have a strict liability cause of action and Pennsylvania does. They disagree about whether the conflict is true or false.

      We conclude that the conflict is false. The governmental interests of Trinidad and Tobago will not be impaired by application of Pennsylvania law, while Pennsylvania's interests would be impaired if the law of Trinidad and Tobago were applied. Therefore, we hold that Pennsylvania law applies.

**Standard**[1]

As a federal court sitting in diversity, we apply the choice of law principles of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). That is Pennsylvania.

Pennsylvania's choice of law analysis consists of three steps. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230–31 (3d Cir. 2007). First, we decide whether there is an actual or real conflict between the two jurisdictions' applicable laws. *Id.* at 230. An actual or real conflict exists if there are "relevant differences between the laws." *Id.*

If an actual or real conflict exists, we determine whether the conflict is true, false, or unprovided-for. *Id.* The conflict is false "if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws." *Id.* at 229. It is a true conflict "if the 'governmental interests of both jurisdictions would be impaired if their law were not applied.'" *Id.* at 230 (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n.15 (3d Cir. 1991)).

If a true conflict exists, we then must "determine which state has the 'greater interest in the application of its law.'" *Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)). To make this determination, Pennsylvania courts apply the "interests/contacts" methodology. *Id.* (quoting *Melville v. Am. Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)). We identify "what contacts each [jurisdiction] has with the accident." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) (quoting *Cipolla*, 267 A.2d at 856). Contacts relevant to the analysis include the "place of injury,

---

[1] The factual background of the case is recited in our Memorandum Opinion denying the defendants' *forum non conveniens* motion. *See Charles v. QVC, Inc.*, No. CV 24-6703, 2025 WL 1648432, at *1–2 (E.D. Pa. June 10, 2025).

2

place of conduct, domicile of the parties, and the place where the relationship between the parties is centered." *Shields v. Consol. Rail Corp.*, 810 F.3d 397, 399 (3d Cir. 1987) (quoting Restatement (Second) of Conflict of Laws § 145(2) (1971)).  We "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Id.* at 400 (citing *Cipolla*, 267 A.2d at 856).

## Analysis

There is an actual conflict.  Pennsylvania law has a strict liability cause of action.  Trinidad and Tobago does not.  Thus, we proceed to the second step.

We must determine whether the conflict is true or false.  This requires consideration of the governmental interests of the two jurisdictions.  If both jurisdictions' interests would be impaired if the other's law is applied, the conflict is true.  If only one's interest is impaired, the conflict is false.  Therefore, we must examine the governmental policies of the respective jurisdictions.

Defendants conflate the first and second steps of the choice of law analysis.  They lump together the existence of a real or actual conflict with whether the conflict is true or false.  They contend that because Pennsylvania has a strict liability cause of action and Trinidad and Tobago does not, there is a true conflict.[2]

Defendants assert that Trinidad and Tobago deliberately chose not to adopt strict liability to encourage trade with foreign corporations.[3]  But, they offer no evidence to support this contention.  Hence, we cannot find Trinidad and Tobago made a deliberate choice to protect foreign corporations by choosing not to provide a strict liability cause of action.

---

[2] Mem. Law Supp. Defs.' Mot. Determine Choice of Law, 5, ECF No. 43-1.
[3] Defs.' Reply Supp. Mot. Determine Choice of Law, 3, ECF No. 51.

Pennsylvania, on the other hand, made a deliberate policy decision when it adopted the Restatement (Second) of Torts § 402A.  It imposed strict liability on sellers of defective products to protect consumers and to encourage manufacturers to make and sell safe products.  *See Webb v. Zern*, 220 A.2d 853 (Pa. 1966).  As we have stated previously, Pennsylvania has an interest in regulating the safety of products sold by companies within the Commonwealth and a reputational interest that is harmed when one is injured using a product marketed and sold from Pennsylvania.[4]

The Third Circuit has held that while Pennsylvania's interest in regulating entities operating within the state, like QVC, would be harmed by applying a lower negligence standard, a foreign nation's interest in encouraging industry would not be harmed by the application of a strict liability standard to nonresident corporations having no operations there.  *See Lacey*, 932 F.2d at 188 ("Applying Pennsylvania law of strict liability would further Pennsylvania's interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers, but would not impair British Columbia's interest in fostering industry within its borders."); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 168 (3d Cir. 1980) ("Scotland's interest in encouraging industry within its borders would not be impaired, however, by applying a stricter standard of care on a foreign corporation which has no industrial operations in Scotland.").

Charles is Trinidadian.  QVC is an American corporation, having no presence in Trinidad and Tobago.  Trinidad and Tobago has an interest in its citizens, like Charles, recovering damages for injuries caused by a foreign corporation.  It has no interest in minimizing a foreign corporation's risk of damages for selling a defective product that

---

[4] *Charles v. QVC, Inc.*, No. CV 24-6703, 2025 WL 1648432, at *8–9 (E.D. Pa. June 10, 2025).

harmed its citizen. Applying Trinidad and Tobago's negligence standard would harm Pennsylvania interests in applying strict liability standards, while application of Pennsylvania law would not harm Trinidad and Tobago's interests.

In summary, Pennsylvania deliberately adopted a strict liability standard to encourage manufacturers to make and sell safer products. The standard reflects Pennsylvania's interest in regulating safety and maintaining a reputation for manufacturing safe products for consumers. These interests would be impaired by the application of Trinidad and Tobago's negligence law. Application of Pennsylvania law would not impair Trinidad and Tobago's interest in its citizen's recovering damages for injuries caused by foreign corporations like QVC and Spectrum Brands. Therefore, because the conflict is false,[5] Pennsylvania law will apply.

---

[5] Because the conflict is false, we do not proceed to the third step of the choice of law analysis (determining which jurisdiction has the greater interest in the application of its law).